## Underhill et al. v. United States Trust Company.

(Decided January 22, 1929.)

TRABUE, DOOLAN, HELM & HELM and THOS. J. WOOD for appellants.

BOOTH & CONNER for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY— Affirming.

The appellant Evie Shreve Underhill, on September 20, 1916, executed to the appellee, United States Trust Company, a deed of trust conveying to it considerable real estate for the following purpose: "First, to hold said property for and during the life of Evie Shreve Underhill and with power in the said Evie Shreve Underhill at her death to will same to whomsoever she may see proper and that in the event Evie Shreve Underhill does not leave a will, then to hold the same in trust for and during the life of Sallie Underhill Kemper and on her death to convey same to the child or children of Sallie Underhill Kemper in equal parts, but if the said Sallie Underhill Kemper shall die without leaving child or children surviving her, then the said Sallie Underhill Kemper shall have power to devise the same to whomsoever she may see proper."

The trustee was given the power to sell and convey the trust estate and reinvest the proceeds thereof in its discretion for the best interest of the trust, and, after maintaining the property and deducting its commission, to pay the net income therefrom to the parties entitled to it under the provisions of the trust, as above stated.

Mrs. Underhill, the settlor of the trust, and Mrs. Kemper, the contingent beneficiary, united in a petition for a declaration of their rights under the deed of trust, specifically asking the court to adjudge whether or not under the circumstances disclosed, Mrs. Underhill was

entitled to revoke the trust, or to have the trust terminated by judgment of the court and the property returned to her free of the trust. It is set up in the verified petition that the moving cause for the execution of this trust deed was that the petitioners were then married to men of idle and wasteful habits, and it was feared that the estate, which was the sole property of Mrs. Underhill, might be dissipated, and that its only purpose was to protect herself and her daughter from the habits and conduct of their respective husbands. It is stated that both of the parties have since been divorced. It is averred that Mrs. Underhill was at the time of the filing of the petition over 70 years of age and in bad health, and that Mrs. Kemper, her only daughter, was over 40 years of age and never had any children. It was asserted further that due to Mrs. Underhill's present condition she is in need of more money than the income from the trust estate will provide; and it was claimed that the purpose of the trust having been accomplished, and the necessity therefor no longer continuing, the trust ought to be terminated. The trust company stated in its answer that it could not deny the allegations of fact contained in the petition, but did deny the conclusion of law pleaded, and joined in the prayer for a declaration of the rights of the parties under the deed of trust.

The chancellor was of the opinion that, under the peculiar conditions of this trust deed, neither the settlor nor the court had the power to terminate it; and it was so adjudged.

Except for the provision in this trust deed, giving a life estate to Mrs. Kemper, with a contingent fee to any child or children which she might have or to her devisees, there would be little difficulty in deciding that the trust might be terminated under the authority and for the reasons given in Fidelity & Columbia Trust Co., Trustee, v. Gwynn, 206 Ky. 823, 268 S. W. 537, 38 A. L. R. 937. In that case Gwynn, being subject to epileptic attacks, placed his property in trust for his own benefit, and provided that at his death the principal should pass under his will or under the laws of descent and distribution. The right to cancel the trust was adjudged because it appeared that the cause for its creation no longer existed (Mr. Gwynn having fully recovered his health), and, since he was the sole beneficiary, the consent of no one

else was required. The opinion was based on a well-established principle applicable to those facts, namely, the power of the court of equity to terminate a trust when its purpose has been accomplished or the motivating cause has ceased and the consent of both the trustor and cestui que trust is given. The case at bar may be differentiated, as there is a condition not involved in the Gwynn trust, namely, an estate in contingent beneficiaries not in being, or not established, and no other of the same class who might give consent; the contingent beneficiary of a life estate alone joining with the settlor in asking a revocation of the trust.

There should be borne in mind, in considering the case, the conclusive presumption that every one may have children born to them so long as they shall live, regardless of age or condition of health.

The grantor, Mrs. Underhill, parted with all title to the property except the beneficial interest in the net income, and the express reservation of the right in her lifetime to withdraw $2,000 of the principal should she need money for sickness of herself or her daughter's family, which right she has already exercised. She only reserved the power to have the entire trust terminated at her death by testamentary disposition of the capital. If she does not exercise such power in that manner, the trust shall continue throughout the life of her daughter, Mrs. Kemper. No power of revocation whatever was granted the daughter, except that she, too, might withdraw a similar sum for the same use should it become necessary. She was merely given the power to dispose of the corpus by will in case she should die childless. By its express provisions, unless terminated by Mrs. Underhill, in the manner stated, the trust will not determine until the death of Mrs. Kemper, at which time the principal will go to her children or devisees, as the case may be. It is therefore not within the power of the trustor and her daughter together to alter or revoke the instrument, nor within the authority of the court to do so, since by the express terms of the trust others have a contingent right under it.

So far as the desire of Mrs. Underhill is concerned, she is restrained by the rule that it is essential that the mode of revocation specified in the trust deed should be followed, and she has herself provided that mode, namely, by her will, which cannot become effective until

after her death. 39 Cyc. 94; Downs v. Security Trust Co., 175 Ky. 789, 194 S. W. 1041.

Having conveyed the estate to ultimate beneficiaries impossible of ascertainment, no other disposition can be made, for these undetermined remaindermen so created cannot consent. Such disposition is not unlike a devise to a named person for life with remainder to his children, which had become vested through the death of the testator. A court would not intervene to deprive the children—in esse or posse—of their property rights under such a provision. Nor may it do so in such a state of case as is presented here. In 26 R. C. L. 1262, the Supreme Court of the United States is cited as authority for the statement: ''An interest in lands conveyed by a trust deed for life or in fee is an immediate vested interest, although to take effect in possession at a subsequent period.'' And it is further shown on page 1263 that: ''A trust deed made by a woman intending marriage, settling her lands so as to provide for her support during life and for the education, maintenance, etc., of any children of the intended marriage, or if none, then with the remainder to other persons named vests an equitable interest in the children when born which cannot be divested by a subsequent conveyance made by the mother and the trustee.''

The standard authority of Perry on Trusts, sec. 104, p. 132, declares the law to be: ''A trust once created and accepted without reservation of power can only be revoked by the full consent of all parties in interest; if any of the parties are not in being, or are not sui juris, it cannot be revoked at all.'' That uniform rule was applied by this court in Beard v. Beard, 173 Ky. 131, 190 S. W. 703, Ann. Cas. 1918C, 832, and in cases therein cited.

On the subject of determination of a trust, it is said in section 920, Perry on Trusts:

''But in settlements where there are cross remainders or contingent interests which cannot be determined and adjusted until the happening of certain events, the trusts cannot be terminated, nor can the share of either one of the cestuis que trust be paid over to him. If a trust is created for the life of one, it cannot be terminated before his death, although there are other words that imply that it may be terminated earlier. If it is clear, however, that part of

the principal of a fund is to be paid over to one of the cestuis que trust upon his arriving at the age of twenty-one, or upon any other event, the trust will terminate as to that part and continue as to others. But a part of the cestuis que trust cannot terminate the trust. Nor can it be determined by consent while it is still uncertain who will take under the bequest relating to the final distribution. One cestui cannot demand a conveyance to himself in contravention of the agreement under which the trust was created.''

In Anderson v. Kemper, 116 Ky. 348, 76 S. W. 124, we stated the law thus: ''The cestui que trust who was entitled to the whole of the net income of the trust estate during his life may consent, where he is not under legal disability, to a change of the terms of the trust, but not so as to affect the other beneficiaries.''

A voluntary deed of trust, as suggested by the learned chancellor in his excellent opinion, is a binding contract between the settlor and the trustee acting for the cestuis que trust, supported by a legal and valuable consideration, namely, the benefits contemplated and resulting to the settlor and the beneficiaries from the creation of the trust. Burton v. Burton's Trustee, 198 Ky. 429, 248 S. W. 1033. As a contract it is, of course, subject to the law applicable to such instruments and, if valid, can be cancelled only with the consent of all the parties. Otherwise, it must be carried into execution. The trustee has not acquired such a title as will enable it to give its consent for and in behalf of the beneficiaries. 39 Cyc. 208-212. Or it may be considered that such a deed is an executed gift and needs no consideration, the acceptance of the trustee being regarded as the acceptance by the beneficiaries, present or ultimate. See 28 C. J. 624; Siter v. Hall, 220 Ky. 43, 294 S. W. 767. We need not take into consideration those cases in which testamentary trusts were involved, some of which are by analogy in point on the question here considered. See Webster v. Bush, 39 S. W. 411, 42 S. W. 1124, 19 Ky. Law Rep. 565; Browning v. Fiklin's Adm'r, 12 S. W. 714, 26 Ky. Law Rep. 470; Carpenter v. Carpenter's Trustee, 119 Ky. 582, 84 S. W. 737, 68 L. R. A. 637, 115 Am. St. Rep. 275; Miller v. Miller, 172 Ky. 519, 189 S. W. 417.

It is earnestly argued by counsel for appellant that where the moving cause for the creation of the trust has

been removed, and its purpose has been accomplished, it is not necessary that all the beneficiaries should consent to its termination. Perhaps such an inference may be drawn from statements in some of our opinions. But it is our definite opinion that where the trust deed vests an estate in beneficiaries who do not relinquish or surrender it—either by refusal or incapacity in law—then the trust cannot be terminated.

It is also earnestly contended that these unknown or unborn contingent remaindermen have virtual representation in this case in the person of Mrs. Kemper. The case principally relied upon in support of the proposition is Masonic Widows' and Orphans' Home v. Hieatt Bros. 197 Ky. 301, 247 S. W. 34. We do not think that doctrine may be applied, for it is necessary that the interest of the representative should be identical with the contingent interest of those coming after him. The subject was fully considered in Lowe v. Taylor, etc., 222 Ky. 846, 2 S. W. (2d) 1042, in which we said: ''But in all cases, the doctrine is planted squarely on the ground of identity of interest between the parties to the action and the persons they are held to represent. It being recognized throughout that, if such identity of interest does not exist, such representation cannot be had, and especially is this true where there is a conflict of interest.''

The interest of Mrs. Kemper is antagonistic rather than identical. She is given only the net income with the power of testamentary appointment, conditioned upon her dying childless. Those who shall come after will take the principal in fee.

The conclusion which we have reached, that the court is without power to terminate the trust, being premised upon the inability of all of the beneficiaries to consent, there is obviated the necessity of deciding whether parol evidence, or conceded allegations of the petition, may be considered to show that the moving cause for the creation of the trust no longer exists, or that its purposes have been accomplished.

The result may appear harsh and an undue restriction upon these parties in view of the circumstances surrounding them, but it must be remembered that this trust deed was wholly voluntary. Had Mrs. Underhill contemplated the changed conditions or the effect of the in-

strument, it is not likely the terms of the deed would have been so restricted; but, having made them so, the rights of the parties must under the law be declared in accordance with those terms.

It follows, therefore, that the judgment should be and is affirmed.